Hear ye, hear ye, hear ye, United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning, this is Robin Rosenbaum and along with me on today's panel are Judge Jill Pryor and Judge Elizabeth Branch. This is the second time we're trying this. It worked pretty well yesterday. Hopefully it will work well again today. The usual time restraints are still in place and Stephanie will go ahead and let you know when you have two minutes left and then she will announce when time is up. Of course, if we have asked you a question, then we would want you to answer that question, even if it takes you over the time. Other than that, though, we would ask that you please comply with the timeframes that are set. In addition, since we are doing this by telephone, if you would please state your name before you speak when you make your argument and we will try to remember to do the same. All right. With all of those things in mind, we'll go ahead and call Pincus v. American Traffic Solutions, Inc. Good morning and may it please the court. My name is Brett Luskin and I represent Appellant Steven Pincus in this appeal. Your honors, it is axiomatic that a city cannot assign government powers to another that the city itself does not possess. This case is about the city of North Miami Beach assigning powers to American Traffic Solutions that the city never had to begin with. Now, before turning to the district court's opinion, your honors, it's important to point out that American Traffic Solutions is not merely a private company in this context. Rather, it is an arm of government. The city hired American Traffic Solutions to carry out a government function, receiving civil traffic penalty payments in connection with red light camera cases, among other things. And the city outsourced that function to American Traffic Solutions exclusively. The city does not perform this function internally at all. You cannot pay your fines to them. You must deal with American Traffic Solutions and only American Traffic Solutions. The point being that American Traffic Solutions is not operating as a private company in this context. It is an extension of the city, wearing the city's clothes, performing a city function. So, in carrying out that government function, American Traffic Solutions cannot do anything that the city cannot do. It is forbidden from doing anything that the city is forbidden from doing. As the Florida Supreme Court stated in Thomas B. State, a municipality cannot forbid what the legislature has expressly licensed, authorized, or required, nor may it authorize what the legislature has expressly forbidden. So, the city cannot authorize American Traffic Solutions to do something that the legislature has expressly forbidden. So, turning to the District Court's decision, I'd like to begin with Count 2. Count 2 of the complaint alleges that Appley's extra fee is prohibited by Florida Statute Section 318.121, entitled Preemption of Additional Fees, Fines, Surcharges, and Costs. The District Court held that this statute doesn't apply to red light camera cases. That was wrong. In fact, this statute contains an exception for red light camera cases in Florida. One express exception for red light camera cases specifically appears right in the text of the statute. The statute reads, notwithstanding any general or special law or municipal or county ordinance, additional fees, fines, surcharges, or costs, other than what work costs and surcharges assessed under Section 318.18 sub 11, 13, 18, 19, and 22 may not be added to the civil traffic penalties assessed under this chapter. So, the statute expressly carves out five exceptions to its prohibition. Counsel, I'm sorry to interrupt. This is Robin Rosenbaum. I understand. I think this is a very tricky case. But what are we to do with the language in Section 318.121 that specifies under this chapter, which obviously refers to 318, and the fee assessed against your client was charged under 316? Okay. Let me try to answer that, Your Honor. So, just to emphasize, the District Court put this statute under a microscope and focused on those last four words assessed under this chapter. But that was myopic. You must understand that in Florida, all civil traffic penalties are assessed under Chapter 318. That is the design of the Florida Motor Vehicle Code. It's divided into nine chapters, take 316 through 324, and each chapter deals with a different aspect of traffic enforcement. For example, 316 sets the rules of the road. What must I do at a stop sign, at a crosswalk? 320 sets the rules for motor vehicle registrations. What vehicles must be registered and how? Chapter 322 sets the rules for driver licenses. Who must be licensed? What happens when a license is suspended, et cetera? And Chapter 318 sets the rules for infractions of the traffic law, deadlines, procedures, penalties, clerks, hearings, et cetera. And when the legislature devised this, they didn't envision that we would be here splitting hairs over chapter numbers. And so, under the District Court's reading, additional costs may not be added to civil traffic penalties in Florida except in red light camera cases. And that can't possibly be right. And that takes me back to the argument that I was just trying to make, which is that if 318... Mr. Luskin, this is Jill Pryor. What's your response to ATS's argument that both 316.83 and 318.18 refer to penalties, and it uses different verbs, assess, impose, collected, prescribed, et cetera, under Paragraph 1B of 316.83? In other words, both chapters characterize the penalties as being under Paragraph 1B of 316.83. Well, I respond that 318.121 nonetheless applies, and that's evidenced by the fact that it has an express exception for 316.0083. That is the last exception that appears in 318.121. The prohibition on additional fees, fines, surcharges, and costs has an express exception for this very statute that we're talking about, 316.0083. That's the exception, the last exception here, 318.18 sub 22. If I can read that exception, Your Honors, from 318.18 sub 22, it says, In addition to the penalty prescribed under Section 316.0083, the red light camera case statute, for violations enforced under Section 316.0083 which are upheld, the local hearing officer may also order the payment of county or municipal costs not to exceed $250. So there it is. That's the one exception for red light camera cases specifically, a $250 hearing fee. An American Traffic Solutions extra charge, which is just an arbitrary profit-driven charge, doesn't satisfy that exception, so it's prohibited. So looking back at 318.121 generally, this exception is literally the exception that proves the rule. This proves that the legislature intended for this proscription to apply to red light camera cases brought under Chapter 316. And I'll go further, Your Honors, and say this, as I've mentioned, this is a preemption statute under Chapter 318 intended to preempt additional fines, fees, surcharges, and costs. But even if the court decides that this is the wrong preemption statute, we have cited the wrong preemption statute, the outcome is still the same because there are equivalent preemption statutes in Chapter 316 as well. In fact, there are two of them. I have a question about – I'm sorry, this is Robin Rosenbaum. I do have a question about the statute in 316.0083, I guess subsection 4, where an individual may not receive a commission from any revenue collected from violations detected through the use of a traffic infraction detector. It uses the term individual, and then later in that same provision it uses the terms manufacturer or vendor. You have argued, and ATS has not argued otherwise, that the term individual includes companies. I'm wondering where you get that from. I looked up the definitions in the statute. There is no definition for individual, so I would think it would just sort of be the usual meaning of individual, which seems to me to be a person, not a company. So maybe you could address that for me. Well, I'd be happy to, Your Honor. We would disagree with that, Your Honor. Two minutes, please. Thank you. Thank you. We would disagree with that, Your Honor. And I agree with you that the statute and the history doesn't define the word individual as it's used here. And the word individual, its meaning is contextual. In some cases, the word individual is used to distinguish individual, natural persons, from other types of entities. In this case, I pose to Your Honor that the purpose of this statute is ultimately to protect drivers from getting ripped off. This is what this is about. It's to prevent kickbacks to companies that have inserted themselves, companies, individuals, anyone who has inserted themselves between the city and the driver to extract extra money. That's what this is for. It's to protect drivers from getting ripped off. And that's what happened. This is a protection statute, a prevention statute. I can scarcely think of another application or any reason that the legislature would intend to prevent kickbacks or payoffs to individuals but then permit the same thing for companies, especially in light of the pervasive paradigm of preventing additional charges that we've discussed earlier. I hope that answers your question, Your Honor. I know that I'm just about out of time, so if you have any additional questions, I'd like to try to hit them now. Yes, this is Lisa Branch. Can you explain what is your best argument for why this would be a commission when it is not a percentage of the traffic fine, when it could be avoided if you paid by check, for example? How does this fall under what would be sort of the traditional notion of a commission? Well, I'm glad you asked that, Your Honor, because the word commission is actually not narrowly defined in everyday usage. And I think that's you can see that in the dictionary definitions that the district judge himself invoked. The Merriam-Webster definition calls it a fee paid to an agent or employee for transacting a piece of business or performing a service. And then it goes on to say especially a percentage of money received from the total pay to the agent responsible for the business. And I think that the commission satisfies, in this case, the payment satisfies even that definition. But notwithstanding that, the word commission, as I said, is not narrowly defined in everyday usage. Sometimes a commission means a percentage of a sale paid directly to the agent from that revenue. But sometimes it's just a flat sum. Thank you. May I finish answering? Yes, please do. Thank you. So as I was saying, sometimes it's just a flat sum. Sometimes it's based upon reaching certain sales milestones. There are many different commission payment arrangements. The one consistent element that makes something a commission is that it is a fee paid to an agent for completion of a task. And that's what the charge is here. It is an additional sum that gets paid to American Traffic Solutions, which is the city's agent, that they get paid upon completion of the task of receiving an electronic penalty payment. And moreover, since the statute is silent as to the definition of commission, I think we should give heavy weight to the legislature's intent in enacting that prohibition that I just discussed earlier. And as a final point on this, Your Honor, even the district judge seemed to agree with us on this when Judge Middlebrooks opined that American Traffic Solutions violated the spirit of the law but not the letter. But even that was too generous, Your Honors, because by the district court's own admission, the statute is silent as to the definition of commission. And so since the everyday use of that word is quite broad, I think we should give it a broad application here. And as a final point, the definition of commission would be the letter of the law. So if American Traffic Solutions violated the spirit of the law and the letter of the law is absent from the statute, how can it possibly be said that they're in compliance with it? The answer is that they are not. And the extra charge is a prohibited commission under any reasonable definition of that word and according to the patent intent of the legislature. So accordingly, we think the district judge erred in dismissing Count 1 and should be reversed. Thank you, Your Honors. Thank you, counsel. We'll hear from Mr. Lange. May it please the court, this is Joseph Lange from Carlton Fields for the Applee American Traffic Solutions. I will start today by making sure that we understand the truly distinguishing fact in this case, which is that this convenience fee is not paid as part of the penalty. It's a completely optional fee. The violator chooses to pay the convenience fee and gets the benefit of the bargain for paying the convenience fee. That benefit is... Mr. Lange, this is Robin Rosenbaum. Yes, Your Honor. What if the City of North Miami Beach were willing to allow ACF to charge a $1,000 convenience fee? Would that still be okay? And that fee would be completely optional. I think that would be okay if the violator has the option to pay. I think it would be completely ineffectual. I don't think anybody would pay it. And if that was the only way to pay, Your Honor, that obviously would have problems too. But this is not a mandatory way to pay. Everybody has the option to not pay the convenience fee. They can drop a check in the mail for $158 and they will not have to pay the convenience fee. People opt to pay this fee. What if they don't have a savings account or a checking account? That's actually part of the benefit of the bargain, Your Honor, for being able to use the credit card, is they get the benefit of being able to pay over time if they don't have cash on hand. No, but what if they don't have a checking account? I mean, what if they just, for whatever reason, the bank doesn't open a checking account? I believe they would still be able to pay by cash is not an option, but I believe possibly a money order is an option. I have not honestly looked at that particular situation. But I don't know that that person has a credit card either. Okay, but, I mean, that's a different question, right? I mean, we're looking at the hypothetical now. Right, the hypothetical of no checking account. Right. And I suppose that person has a difficult time paying by check. I don't know that that person could pay by credit card either, but that is a hypothetical. They could pay by credit card, but not by check. Then in that particular hypothetical, I don't see that there's a way to avoid the convenience fee. I grant Your Honor that hypothetical. I don't know that that hypothetical exists in the real world. Okay, let me ask you something. Assuming it does, just for purposes of the hypothetical, and you may well be right that it doesn't, but assuming that it does exist, is that then a problem under the analysis that you've set forth where you just conceded a moment ago that if the 5% surcharge applied across the board, it would be a problem? No, we still don't believe that this, I'll get into our arguments now. For all the reasons the district court decided that this does not violate the statute itself, I think it's important that it's completely optional. But 316, this is not a commission in any event, and I need to emphasize that. Under the 316-0083, this is not a commission, whether it's mandatory or optional, because it doesn't come from the $158. What this is aimed at is a percentage of the $158. What the legislature is trying to do here is protect the $158 fee because the statute set out exactly how that has to be divvied up, and the legislature doesn't want that $158 to be divvied up and paid out as a percentage of value commission, for instance, to a traffic infraction enforcement officer. I'm sorry to interrupt again, but I just want to make sure I understand the argument. My understanding, and maybe I have this wrong, of the plaintiff's argument is that it's section 318.121 that applies, and you don't even have to look at 316.0083, but if you do look at it, it also applies. So, can you address 318.121, and I assume your argument is that it applies only to Chapter 318, but can you respond to the argument that they have made about how it references assessed costs or assessed surcharges under 318.18 sub 18, which does, in fact, refer to Chapter 316? Yes, Your Honor. First, I will confirm that our primary argument is that it says that it only applies to cost fees that are assessed under this chapter, and it's crystal clear that this is assessed under 316. In fact, the very exception that the plaintiff references, the subsection 22 that he says proves his point, that subsection actually says that the penalty is prescribed under Chapter 316.0083, so that actually confirms the chapter that the penalty is prescribed under. But as far as the cross-referencing of Chapter 316.00 and 318.00 throughout the scheme that he is referring to, 318.00 has existed for years and years on the books. The legislature enacted the Mark Wandahl Act to endorse these types of programs, and enacted it as a supplemental statute in Chapter 316.00. Naturally, there is a little bit of cross-referencing, and the subsection 22 is to protect the city's ability to charge the $250.00 fee at a hearing as an additional mandatory fee. This, as I said, is not even a mandatory fee. This is a convenience fee. But there is some cross-referencing between Chapter 318.00 and Chapter 316.00, but even the subsection he refers to says that this penalty is prescribed under Section 316.0083. Therefore, this prohibition doesn't even apply to this convenience fee. I was explaining why it's not a commission under Chapter 316.00, and make sure it's not paid out. Mr. Lang, this is Jill Pryor. Mr. Luskin points out that the statute that deals with commissions says any revenue, rather than simply referring to the fee, and that any revenue would include the penalty plus the convenience fee. What's your response to that argument? What it actually says is any revenue collected from violations, and the revenue that is collected from the violation here is the $158.00. That is all anybody is required to pay to satisfy the violation. This is a convenience fee. I'm sorry, Mr. Lang. If we hang it on that, though, then what would stop the imposition of any kinds of additional fees by APS or whoever might be in their position for any reason whatsoever, just because they wanted to impose the additional fees? If they are mandatory fees and they turn on the number of violations detected, the second clause of this section does not allow it. Right, but you see, that's the problem, right? Let's say APS just decided that you had to pay $20.00 along with your payment, and they just said because that's what we require. They didn't say it was because of the number of violations or anything of that nature. I mean, wouldn't that be a problem under your interpretation? I mean, there's nothing that would prevent that, is there? And that would be a mandatory fee that everybody would have to pay? Yes. I believe that that comes a mandatory fee across the board. I don't know is authorized under the statutory scheme. Well, I think that that could even be, if everybody has to pay an extra $20.00, then that arguably turns upon the number of violations detected, which is what the vendor is prohibited. I'm sorry. Why does that turn on the number of violations detected? Because it would go up in direct correlation with the number of violations detected if everybody has to pay a $20.00 extra fee like that. Okay. I see what you're saying. There would be a direct relationship there. I do need to point out that that provision in this case has been waived below. The district court made that point in the order that that provision, which is the only provision. I don't think that the plaintiffs contest that. Mr. Lange, this is Lisa Branch. Isn't it possible that the fine is being assessed? You talked about the cross-referencing between Chapter 316 and 318. Isn't it possible the fine is being assessed under both? I don't think that there is any place that you can find in Chapter 318 that directly assesses the $158.00 charge on this particular type of violation. I believe that that is found in Chapter 316.0083. As I say, I think even 318.121.22 says that. It doesn't say it's prescribed under this chapter or this chapter and Chapter 316. Subsection 22 of 318.18 says, in addition to the penalty prescribed under Section 316.0083, I think it's pretty clear it's prescribed or assessed under Chapter 316.00. That's what the district court determined as well, and we embrace that. I would welcome any other questions about Chapter 316.00 or 318.00, but I do want to make sure I get to one further unjust enrichment point. Okay. For both the money transmitter argument, which did not come up— I'm sorry to interrupt, Mr. Lang, but Mr. Luskin did not raise the unjust enrichment point during his argument. You're welcome to do it if you want, but then I'm going to give him an opportunity to respond. I am not going to touch on the subsection 560. I do want to make a point, though, that goes to unjust enrichment across the board, and so it goes to unjust enrichment, the very causes of action for all three counts here, and that is that all of these counts can be resolved under the baptista from this court, the baptista line of reasoning that when you get the benefit of the bargain for a fee paid, you don't have an unjust enrichment claim as a matter of theory, and that is followed on by we cite the Ascensio case, which is very similar from the Middle District of Florida, but baptista is from 2011, and in a footnote, there's an alternative holding that unjust enrichment, when you get the benefit of your bargain, when you have the ability to pay a convenience fee and you get a direct benefit back as a matter of theory, that doesn't give rise to an unjust enrichment claim, and so we would argue that across the board, the baptista Ascensio reasoning is an alternative basis not reached by the district court, but for affirming this order, and therefore, we would argue that there's an alternative basis not reached by the district court. District court did not need to reach it, but this is not a theoretically correct unjust enrichment claim in the first instance on any of the three counts. I'm happy to take any other questions, and if not, I would ask that the court affirm the order on appeal. Thank you, Mr. Lang. Mr. Lusk, you have five minutes for rebuttal. Thank you, Your Honors. May it please the court, this is Brett Luskin again. Your Honors, Counsel for Appley has described this arrangement a number of different times as the plaintiff getting the benefit of the bargain, that it's an optional fee, suggesting that the plaintiff is buying something and getting something in exchange. This is why I began my argument by explaining that American Traffic Solutions is not a private company in this context. You have to remember that it isn't a voluntary relationship here. It's city versus driver, which means, in this case, it's American Traffic Solutions versus driver. When an accused driver talks to American Traffic Solutions, it's not, you can pay us if you want to. It's, you have to pay us, or else. So these payments are not voluntary, arm's-length transactions. It's not a bargain. Mr. Luskin, this is Robin Rosenbaum. What about the point that APS makes that you don't have to pay by credit card, you can pay by check, and you can avoid this fee altogether if you do that? So I'll respond to that by saying that's a false choice, Your Honor. You have to remember that American Traffic Solutions set up the board the way that it stands. It was American Traffic Solutions that unilaterally decided to foreclose cash payments, you know, legal tender, good for all debts, public and private, except red-light camera cases. It was American Traffic Solutions that unilaterally decided to foreclose on-site payments. You can't make these payments in City Hall. You have to deal with them out of state. So they set up the rules. I'm sorry, but what difference does that make if you can still pay by check? I would say the difference, Your Honor, is that the city cannot do this. I don't think anyone disputes that the city does not have the authority to just unilaterally inflate the amount of the civil penalty just to line its coffers based on payment methodology. That's a false distinction. They don't get to decide what money is good and what money is bad, and I don't think that they get to describe this as a bargain. It's not a bargain. You have to deal with American Traffic Solutions, just like American Traffic Solutions has to carry out the city's government function of collecting civil penalties, just as the city would. I think, Your Honor, it was a good example when Your Honor said, what if the convenience fee was $1,000? You can see the abuse becomes evident when you start taking numbers like that. And I think it goes to the point, why is it only 5%? Why is it called a convenience fee? All of this is intended to obfuscate. Mr. Luskin, can you focus for me, though? I mean, you've made the argument that the city couldn't go ahead and charge 5% to make you pay by credit card, and that may well be true, but where is that coming from? Where is that coming from? That is coming from the principle of preemption, Your Honor. 318.121 is a preemption statute. Yes, yes. Mr. Luskin, I'm sorry. I understand the preemption argument. What I'm saying is you're saying that APS stands in the shoes of the city, right? And so the state has preempted any additional charges or fees by the city. But I need you to point me to the particular statute that does that.  I think I understand, Your Honor. Let me try to explain then. The American Traffic Solutions right to impose this surcharge, it supposedly comes under color of law based upon their contract with the city of North Miami Beach. That contract purports to authorize them to do that. There's language in there that says that they're authorized to impose this 5% charge, collect it, and keep it, and that it's paid by the violator. And the problem with that, the best thing I can give you as I sit here for that now, would be Thomas v. State, which is a Florida Supreme Court case in which they say, a municipality cannot forbid what the legislature has expressly licensed, authorized, or required, nor may it authorize what the legislature has expressly forbidden. The legislature expressly forbids this, so it can't authorize its agent or employee or contractor to take this action. Great. What I'm asking you is where does the legislature expressly forbid this? That's what I'm asking. Okay. Let me try to answer that. The legislature forbids this in a couple of different ways. First, we submit that it's expressly forbidden by the text of 318.121 itself, which preempts additional fees, fines, surcharges, or costs. And we submit this is such a cost. Apart from that, in 316, we also have 316.007 and 316.002, both of which expressly preempt matters of traffic law to the state. And where you have express preemption, as we said, a unit of local government cannot impose a civil traffic penalty more severe than fixed by state statute, nor can they enforce an ordinance on a matter covered by those chapters unless expressly authorized. And they're not expressly authorized to impose this charge. Time has expired. All right. Thank you very much, counsel. Do you want to wrap up? Thanks. Did you have any more for me, Your Honor, or am I finished? No. If you wanted to conclude, I'd give you a moment to briefly conclude. Oh, we would just say that we ask that the court reverse the dismissal of the complaint by the district court. Thank you, Your Honors. All right. Thank you very much, counsel. We will be in recess until tomorrow.